No. 50743.—Protests 96312–K, etc., of B. H. Lepow (New York).

KEEFE, Judge: The merchandise in question was invoiced as "Billiard ball ivory" and the collector assessed the same with duty at 10 percent ad valorem under paragraph 1558, Tariff Act of 1930, as a raw or unmanufactured article. The plaintiff claims that the merchandise is entitled to free entry under paragraph 1701, as "Ivory tusks in their natural state or cut vertically across the grain only, with the bark left intact."

At the trial an ivory tusk, cut at both ends, was admitted in evidence as illustrative of the imported merchandise and marked illustrative exhibit A. Exhibits B, C, and D, consisting of photographs of illustrative exhibit A, were admitted in evidence. All of these illustrative exhibits were admitted in evidence over the objection of Government counsel. Illustrative exhibit A was withdrawn at the end of the trial. Exhibits B, C, and D illustrate a side view of the tusk, an end view where the hole left by the nerve center is visible, and another end view which illustrates the thin line separating the bark from the denture of the tusk.

The importer testified that he had lived in Africa for 20 years, collecting live animals, shooting elephants, and buying elephant tusks at public auction at Mombasa for shipment to the United States. He was thoroughly familiar with the various kinds of tusks of elephants and their preparation for market. He testified that tusks vary according to the section of the country in which the elephants live; that soft ivory is taken from elephants living near the river country on "black cotton soil"; that the color of the bark of such ivory is very light, the tusks becoming polished from working the soil; that the hard or brittle ivory is from elephants whose habitat was a stony section of the country; that such ivory has a color "as though burned from the sun" or "like it was on fire"; and that the elephant when working hard stony ground very often tears, dents, or blemishes the bark of the tusks. The witness further testified that the tusks are prepared for market by washing in salt water and removing the meat clinging to the tusk by means of a wire brush, but that the use of the wire brush will not change the color of the ivory nor affect the bark in any way. As to the extreme hardness of the ivory, the witness testified:

X Q. Don't they scrape them for the purpose of taking out these blemishes?—A. No.

X Q. And to level off, that is, to smoothen the surface?—A. No, it cannot be—pardon—if they would smoothen off the ivory a brush will never scratch ivory. If you have a knife and you will start scratching with it it will take you probably a year to make a little dent of about one-tenth of an inch.

X Q. But when there are already dents in the tusk——A. You can't take it out.

X Q. You use a brush, isn't it, to scrape off some of the bark?—A. No, you cannot take it down. You will have to cut off probably half a pound of ivory. In a big tusk you will have to take off about one-tenth of the ivory. You will lose too much money to take off too much. By just brushing it——

X Q. Well, when you have these tusks that have been forced into the ground, into rocky ground by the elephants——A. Yes.

X Q. And they contain tears or rips——A. That is right.

X Q. In the bark——A. Yes.

X Q. Are they imported in that condition, with the rips and tears right in the bark?—A. Yes, imported in the same condition, but are not good for billiard balls. [Record, pp. 20 and 21.]

The witness further testified that he examined every piece of ivory contained in the shipments in question and that he remembers this particular ivory and its condition; that the imported ivory was in about the same condition as the ivory in illustrative exhibit A. Some pieces were a little lighter in color, some the same color, and others a little darker, but the condition was the same; and that nothing is done to the ivory before shipping except to clean off the dirt and dried flesh adhering to the tusks.

The examiner of ivory testified that he remembered the shipments very well; that the parts of tusks contained sections where a small percentage of bark up to about 30 percent had been removed; that the condition of the bark he examined was not the same as that in illustrative exhibit A; that the sections of tusks differed by being cleaner, there were no tears and cuts in the bark, they were without any blemishes such as were in the bark of illustrative exhibit A; and that the dentine was exposed in different parts of each section where the bark had been removed.

The examiner of free ivory testified that he had made a 100 percent examination of the merchandise and found the bark to have been removed in certain spots varying in size from 1 to 3 inches; that the ivory he examined differed from illustrative exhibit A in that almost all of the coloring had been removed, that is to say, the yellowish stains that appear on the outer surface of the exhibit; that there were instrument marks along the whole section of the ivory which do not appear on the illustrative exhibit; and that there were various sections where the bark had been removed.

It appears that neither of the examiners was experienced in the examination of ivory. Indeed they admitted it might have been possible that the shipments in question were their first experience in the examination of ivory. On the other hand, the importer was long experienced in handling ivory and knew exactly the preparation thereof in Africa for shipment to this country. He testified that the material is so hard in texture that the scraping and cleaning to remove any dirt adhering thereto would not affect the ivory in the least. He also testified that ivory which had bark removed was not suitable for the use of billiard balls, because of its rapid deterioration, and that the imported merchandise was used for billiard balls.

In view of the evidence presented, we are of the opinion that it has been sufficiently established that the billiard-ball ivory in question was in such condition as would bring it within the duty-free paragraph 1701, as claimed. Judgment will therefore be entered in favor of the plaintiff directing the collector to reliquidate the entries and make refund accordingly.